IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENTSPLY INTERNATIONAL, INC.          *
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,           *
a Delaware Limited Liability Company,
                                      *     Case No.
          Plaintiffs,
                                      *
v.
                                      *
LEWIS AND ROCA, LLP
                                      *
and
                                      *
THOMAS P. GULLEY, ESQ.
                                      *
          Defendants.
*************************************************************************

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiffs, Dentsply International, Inc. ("Dentsply") and Tulsa Dental Products,

LLC ("TDP") (collectively "Plaintiffs" or "Clients") by undersigned counsel, hereby file

this Complaint against Defendants Lewis & Roca P.C. and Thomas P. Gulley

(collectively "Defendants" and the "Lawyers"), and state the following:

**NATURE OF THE ACTION**

1.     This legal malpractice action arises from a contract dispute between

Dentsply and TDP and Guidance Endodontics, LLC ("Guidance").  As a result of the

dispute, Guidance filed suit against Dentsply and TDP in the United States District Court

for the District of New Mexico, No. 2008-CV-1101 JB/RLP.  The lawsuit and the events

leading up to the lawsuit regarding the Manufacturing and Supply Agreement (as defined

in paragraph 14 *infra*) are referred to hereinafter as the "Underlying Case."

2.     Defendants Thomas P. Gulley, and Lewis & Roca P.C. represented Clients in the Underlying Case.

3.     Defendants hold themselves out to the public as knowledgeable in handling contract and litigation matters.

4.     As a law firm and an individual member of the New Mexico Bar, Defendants had obligations to meet the standard of care for New Mexico attorneys. Such care included, but was not limited to, giving proper legal advice with respect to the issues and claims in the Underlying Action, adequately investigating the issues and claims in the Underlying Action, adequately engaging in pre-trial discovery, adequately investigating and ascertaining key witnesses, adequately preparing witnesses for depositions and trials, adequately preparing for and conducting trial, making appropriate motions at trial to ensure that the jury did not consider improper and prejudicial evidence, making appropriate motions to preserve issues for appeal, objecting to erroneous jury instructions, not inviting error, and introducing evidence at trial to rebut Guidance's claims.

5.     Defendants knew that Clients were placing their trust and confidence in Defendants. Defendants' representation of Clients failed to meet the applicable standard of care. Defendants' breaches of their duties included, but are not limited, to the following:

a.     Defendants failed to develop a theory of the case prior to trial;

b.     Defendants failed to conduct adequate and appropriate discovery;

c.     Defendants failed to retain appropriate experts or elicit necessary expert testimony;

d.     Defendants failed to object to erroneous jury instructions and invited error;

e.      Defendants failed to make appropriate motions; and

f.      Defendants failed to preserve key issues for appeal.

6.      As a direct and proximate result of Defendants' professional negligence, breach of contract, and breaches of the applicable standard of care and fiduciary duties, Guidance obtained a verdict against Clients in excess of $44 million dollars, and Clients sustained damages in excess of $15 million dollars.

## THE PARTIES

7.      Plaintiff/Client Dentsply is a Delaware corporation, with its principal place of business in York, Pennsylvania.

8.      Plaintiff/Client TDP is a Delaware limited liability company, with its principal place of business in Tulsa, Oklahoma, and a manufacturing plant in Johnson City, Tennessee.   Its sole LLC member is Dentsply.

9.      Defendant Lewis & Roca P.C. ("Lewis & Roca" or "the Law Firm"), is a law firm doing business in New Mexico with its main office in Phoenix, Arizona, and numerous branch offices, including an office in Albuquerque, New Mexico.

10.      Defendant Thomas P. Gulley ("Mr. Gulley"), is an attorney and was a principal at Lewis & Roca in its Albuquerque, New Mexico office.  Mr. Gulley, Lewis & Roca, and other Lewis & Roca counsel (including, but not limited to Rebecca L. Avitia, Esquire), provided legal services to and for the benefit of Clients, and litigated and tried the Underlying Case on behalf of Clients.  At all times relevant to this action and in regards to every claim made in this Complaint, Mr. Gulley and other Lewis and Roca counsel were acting within the scope of their employment as attorneys for Lewis & Roca.

11.     Defendant Lewis & Roca is liable for acts or omissions taken by Mr. Gulley and other counsel while they were employed by Lewis and Roca.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a). Plaintiffs are all citizens of the Commonwealth of Pennsylvania and Defendant Gulley is a citizen of New Mexico.  Further, no member of Defendant Lewis & Roca, LLP is a citizen of the Commonwealth of Pennsylvania, thus, this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest, and costs.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1)-(3). This is the District in which a substantial part of the events, acts or omissions giving rise to the claims herein occurred.

## FACTS COMMON TO ALL COUNTS

A.      **The Underlying Action**

14.     On July 29, 2008, Clients entered into a Manufacturing and Supply Agreement ("Agreement") with Guidance, wherein Clients agreed to manufacture and supply certain endodontic products to Guidance, including obturators, endodontic files and ovens, provided that Guidance met certain obligations and preconditions.   Guidance would then sell the products to end-users in competition with Clients.

15.     On or about September 24, 2008, Clients advised Guidance that Clients could not fill Guidance's order for the endodontic files – called the V2 – because the Agreement required Guidance to first provide Clients with detailed engineering drawings

as a prerequisite to Clients' manufacturing obligations, and Guidance had not met that condition precedent.

16.     On or about September 25, 2008, Clients advised Guidance that it had breached the Agreement by marketing the products contrary to Articles 2.4 and 9.1 of the Agreement, including advising potential customers that (1) the products were manufactured by Clients; (2) the products were compatible with and could be used with Clients' products; and (3) the Guidance products were half the price but the same as the products being sold by Clients.  Clients further advised Guidance that until they received written confirmation from Guidance that it would cease and desist such activity, Clients would not continue supplying the obturators.

17.     Also on or about September 25, 2008, Clients advised Guidance that its advertising brochures and activities included representations that were false and/or misleading and thus actionable under the Lanham Act.  Clients requested that Guidance cease and desist making the representations or provide to Clients substantiation that the claims were not false or misleading.

18.     In or about November 2008, Guidance filed suit against Clients in the United States District Court for the District of New Mexico for failure to manufacture and supply the obturators and files, alleging the following causes of actions:

   a.     First Claim for Relief:  Breach of Contact – Guidance Obturators;

   b.     Second Claim for Relief:  Breach of Contract – Guidance Files;

   c.     Third Claim for Relief:  Breach of Contract – Breach of Implied Covenant of Good Faith and Fair Dealing;

   d.     Fourth Claim for Relief:   Violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531, *et seq.*;

    e.      Fifth Claim for Relief:  Violation of the New Mexico Unfair Practices Act ("NMUPA"), § 57-12-1, *et seq.*;

    f.      Sixth Claim for Relief:  Violation of the Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and

    g.      Seventh Claim for Relief:  Tortious Interference with Existing and Prospective Contractual Relations.

19.      Article 12.12 of the Agreement required that if a dispute arose out of or relating to the Agreement, the parties would first engage in mediation administered by JAMS.  Guidance breached that term of the Agreement by initiating litigation without first participating in mediation.

20.      On or about December 31, 2008, Clients responded to Guidance's claims, including filing a counterclaim against Guidance and Dr. Charles Goodis (the owner of Guidance), alleging:

    a.      Count I - Breach of Contract;

    b.      Count II - Breach of the Covenant of Good Faith and Fair Dealing;

    c.      Count III – Violations of 15 U.S.C. § 1125(a);

    d.      Count IV – Violations of 15 U.S.C. § 1125(c);

    e.      Count V – Violations of 15 U.S.C. § 1114(1);

    f.      Count VI – Unfair Competition;

    g.      Count VII – Violation of New Mexico's Unfair Practices Act;

    h.      Count VIII – Unlawful Misappropriation of Dentsply/TDPs' Reputation, Goodwill, Intangible Trade Values and Standing in the Dental Community;

    i.      Count IX – Tortious Interference with Dentsply/TDPs' Prospective Business Advantage;

    j.      Count X – Fraud;

    k.      Count XI – Punitive Damages;

l.      Count XII – Declaratory Judgment; and

m.      Count XIII – Rescission.

21.     During the course of the Underlying Action, several of the claims and counterclaims were dismissed.

22.     The issues that went to the jury were Guidance's claims for breach of contract, breach of implied covenant of good faith and fair dealing, violation of the NMUPA, and violation of the Lanham Act, as well as Clients' breach of contract and Lanham Act claims.

23.     The Defendants represented Clients in the Underlying Case and eventually tried the case from September 21, 2009 through October 9, 2009.

24.     The jury returned a verdict in Guidance's favor, finding:[1]

a.      Clients breached the Manufacture and Supply Agreement as to the V2 file, and awarded $4,080,000.00 ($500,000.00 for the breach up to the time of trial and $3,580,000.00 for the breach from the date of trial to the end of the Agreement).

b.      Clients breached the Agreement as to the supply of the obturators, breached the implied covenant of good faith and fair dealing, and violated the New Mexico Unfair Practices Act, and awarded nominal damages in the amount of $200,000.00 for purportedly failing to produce the quantity and quality of products under the Manufacturing and Supply Agreement. The Court later conditionally ordered that the $200,000 be remitted to $1.00.

c.      Clients' breach of the implied covenant of good faith and fair dealing was in bad faith and awarded punitive damages in the amount of $40,000,000.00.  The Court later conditionally ordered that the punitive damages be remitted to $4,080,001.

d.      Guidance also was awarded pre and post judgment interest.  Additionally, the court invited Guidance to re-file its motion for attorneys' fees, which according to Guidance as of March 31, 2010, totaled over $3.5 million.

---

[1] The jury also returned a verdict in favor of Dentsply on its 15 U.S.C. §1125(a) claim in the amount of $93,000.

7

**B.     The Defendants' Breaches of the Standard of Care in the Underlying Case**

25.     At all times relevant to the Underlying Case, Defendants were Clients' attorneys and provided legal representation to and on behalf of Clients.

26.     In representing Clients, Defendants failed to properly investigate, evaluate, and develop the factual and legal issues in the Underlying Case.

27.     Defendants failed to properly advise Clients on the central issues and potential liability in the case, including the fact that punitive damages were a real possibility.

28.     Defendants also breached the standard of care in their handling of pre-trial and trial matters.  The following paragraphs set forth examples, but by no means an exhaustive list, of Defendants' negligence and breaches of the standard of care.

**Defendants Failed to Develop a Theory of the Case Prior to Trial**

29.     The Agreement was clear that Guidance was required to submit engineering drawings prior to Clients' obligations to manufacture or supply the products.

30.     Notwithstanding the Agreement's unambiguous language, Defendants failed to understand the contractual language and develop a theory of the case prior to trial.  Had Defendants done so, Clients would have prevailed in the Underlying Case.

31.     Indeed, the trial court noted that Defendants did not "solidif[y] its legal and factual theories before proceeding to trial."  Memorandum Opinion and Order on Defendants' Motion for New Trial to Guidance's Prejudicial Mid-Trial Switch in Position on Whether the V2 is a "New Product" and Error in Jury Instruction 21, pp. 42-43.

32.     The court further noted that Defendants "were not fully prepared . . . to address thoroughly the interplay between some of the Supply Agreement's provisions." *Id.* at 43 n. 21.

33.     The court also stated that "[a]t any moment the Defendants could have pointed out the inconsistency between [Guidance's] position . . . but they did not . . . . The Defendants took an <u>unreasonable</u> risk in relying, if they did, on Guidance's implied position on an issue of contract interpretation to establish an element of their defense." *Id.* at 53 (emphasis added).

34.     Defendants claimed, both at trial and in post-trial papers, that they were surprised by Guidance's position at trial, and that Clients were prejudiced as a result of that surprise.  Had Defendants conducted a proper investigation and formulated a theory of the case, they would not have been surprised, Clients would not have been prejudiced, Clients would have obtained summary judgment prior to trial, and Clients would not have received the verdict against them that was rendered in the Underlying Case.  *Id.* at 52 n. 28.

## Defendants Failed to Conduct Adequate and Appropriate Discovery

35.     Defendants failed to conduct adequate discovery including, but not limited to, their failure to file requests for admissions regarding the unambiguous contract language, their failure to draft appropriate interrogatories, including an interrogatory directed to the New Mexico Unfair Practices Act (NMUPA), and their failure to depose key witnesses including, but not limited to, Jeffrey Ginsberg.

36.     With respect to Defendants' failure to file requests for admissions, the trial court stated:

The Court notes that much of [Defendants'] motion might have been avoided by judicious use of discovery, such as requests for admission under rule 36. . . . . The Defendants could have asked Guidance to admit that it believed the V2 was a new product subject to Article 4.5 of the Supply Agreement.  Such a request could appear redundant, given the allegation in the Complaint, but it would have established that the V2 was a new product and perhaps **entitled the Defendants to summary judgment on the breach-of-contract claim relating to the V2**.  They could also have made the following two requests, if they perceived some confusion relating to Exhibit 1:  (1) please admit that the V2 is the .04 constant-taper file to which the first part of Exhibit 1 to the Supply Agreement, found on pages 24-25 of Document 2-1 of the Court's docket, refers; and (ii) please admit that the V2 is the .04 constant-taper file to which the second part of Exhibit 1 to the Supply Agreement, found on pages 25-28 of the Document 2-1 of the Court's docket, refers.  An affirmative answer to either request would have locked Guidance into that theory, and a negative answer to both would have alerted the Defendants that a contract-construction dispute was in their future. . . . **[T]he Defendants could have avoided many of their current problems with more careful and thoughtful use of the discovery tools that the federal rules provide**.

*Id.* at 52 n. 28 (emphasis added).

37.     Given that Guidance's position prior to trial and during most of the trial was that the contract was unambiguous and that engineering drawings were required, had Defendants filed the appropriate discovery and locked Guidance into that position sooner, Clients would have been granted judgment as a matter of law on the breach of contract claim.

38.     Defendants also failed to conduct adequate discovery by failing to draft interrogatories related to Guidance's NMUPA claim.  Specifically, the trial court held "Defendants run into a rather substantial problem:  they made no discovery requests aimed at discovering the factual basis of Guidance's NMUPA claim."  *See* July 1, 2010 Memorandum Opinion, pp. 43-44.

10

**Defendants Failed to Retain Appropriate Experts or Elicit Necessary Expert Testimony**

39.     Defendants breached the standard of care in not retaining the appropriate experts and eliciting the necessary expert testimony including, but not limited to, not retaining the appropriate experts on the interpretation of the contractual provision related to engineering drawings as well as the appropriate experts related to damages.

40.     With respect to future damages, the trial court noted:

> The Court does not believe that defense counsel was caught unawares by the prospect of future damages.  The Defendants received significant notice that Guidance might seek future damages, at least enough to present some evidence of mitigation of damages and to present some testimony to contradict McDonald's [Guidance's expert] future-damages testimony.  They also could have objected to McDonald's future-damages theory on Daubert grounds, but they did not.

*See* August 26, 2010 Memorandum Opinion, pp. 39-40.

41.     Defendants breached the standard of care by failing to submit evidence in contradiction of Guidance's damage expert, failing to properly object to future damages, and failing to introduce evidence regarding Guidance's failure to mitigate damages. Defendants' failures and breaches in the standard of care resulted in the adverse verdicts against Clients.

**Defendants Failed to Object to Erroneous Jury Instructions and Invited Error**

42.     Defendants breached the standard of care by failing to object to erroneous jury instructions including, but not limited to, their failure to preserve key objections to Jury Instruction 21.  *See* August 3, 2010 Memorandum Opinion, pp. 56-74 (finding that Defendants waived certain objections).

43.     Defendants further breached the standard of care by inviting error including, but not limited to, providing the court with an erroneous jury instruction.

44.     On September 15, 2009, the Defendants filed the following proposed jury instruction on Clients' claim against Guidance for breach of the implied covenant of good faith and fair dealing:

> Every contract, including the one in this case, contains an implied covenant of good faith and fair dealing.  This covenant requires the parties to the contract to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.  A party is liable for breaching the implied covenant of good faith and fair dealing if you find that its conduct frustrates the overarching purpose of the contract and that such action actually or nominally damaged the other party.
>
> In this case, Guidance is liable for breach of the implied covenant of good faith and fair dealing if you find that it acted arbitrarily or unreasonably, its conduct prevented Dentsply and/or Tulsa Dental from receiving the fruits of the contract, and Guidance's actions actually or nominally damaged Dentsply and/or Tulsa Dental.

*See* Dentsply/TDP's Proposed Jury Instructions, Instruction 8, at 9 (filed September 15, 2009).

45.     On September 28, 2009, Defendants submitted a proposed verdict form, containing the following questions regarding punitive damages and breach of the implied covenant of good faith and fair dealing:

> (6)     Do you find that Guidance breached the implied covenant of good faith and fair dealing?
>
> _____ YES                          _____NO
>
> If your answer to Question No. 6 is "YES", go on to Question No. 7.  If your answer to Question No. 6 is "No," go to Question No. 11.

(7)     Do you find that Dentsply and/or Tulsa Dental have suffered actual or nominal damages as a result of Guidance's conduct?

    _____ YES                 _____NO

If your answer to Question No. 7 is "YES", go on to Question No. 8.  If your answer to Question No. 7 is "No," go to Question No. 11.

(8)     In a lump sum, state the amount of actual or nominal damages you award Dentsply and Tulsa Dental.

    $_____

Go on to Question 9.

(9)     Do you find that Guidance's breach of the implied covenant of good faith and fair dealing was in bad faith?

    _____ YES                 _____NO

If your answer to Question No. 9 is "YES", go on to Question No. 10.  If your answer to Question No. 9 is "No," go to Question No. 11.

(10)    In a lump sum, state the amount of punitive damages you award Dentsply and Tulsa Dental.

    $_____

*See* Dentsply/TDP's Proposed Verdict Form for Claims Asserted by Dentsply/TDP at 3.

46.     The trial court held that the above set of jury questions "would allow the jury to award punitive damages to the [Clients] based solely on a bad-faith breach of the implied covenant of good faith and fair dealing."  *See* October 14, 2010 Memorandum Opinion, p. 6.

47.     The court ultimately dismissed Clients' implied covenant claim against Guidance, finding that it was duplicative of Clients' breach of contract claim. Nevertheless, the court adopted the language proposed by Defendants when instructing on Guidance's implied covenant claim against Clients.

48.     The court also adopted the Defendants' proposed verdict form into its proposed verdict form.

49.     The court's punitive damages instruction provided, in part:

> Guidance may only recover punitive damages for Dentsply's and/or Tulsa Dental's breach of implied covenant of good faith and fair dealing if you find that Dentsply's and/or Tulsa Dental's breach of the implied covenant was in bad faith.

*See* Court's Final Jury Instruction, Instruction No. 37.

50.     Post trial, the trial court found that the jury instruction permitting the jury to award punitive damages for a bad-faith breach of the implied covenant of good faith and fair dealing was invited error because Defendants proposed similar language in their submitted instructions and verdict form.  *See* October 14, 2010 Opinion, p. 69 ("Because the Defendants invited the Court to instruct the jury that bad-faith breach of the implied covenant was a sufficient predicate for punitive damages, they have waived that issue. The Court thus denies the Defendants' motion on that ground.").

51.     As a result of Defendants' inviting error and the improper jury instruction, the jury awarded punitive damages against Clients.

52.     Defendants also breached the standard of care in failing to ensure that all of the elements of an implied covenant of good faith and fair dealing claim were in the jury instructions.

53.     The court noted that Defendants agreed to the elements of the cause of action and therefore "waived [any] sufficiency-of-the-evidence arguments with respect to elements other than those submitted."  *See* October 14, 2010 Opinion, p. 73.

54.     As a result of Defendants' failure to ensure that the jury instruction included all of the elements of an implied covenant of good faith and fair dealing claim,

Guidance was not required to prove all of the elements of the claim and a verdict was entered against Clients.  Additionally, the waiver precluded any meaningful review on appeal.

55.    Defendants also "waived the right to challenge whether Guidance was entitled to recover on an implied-covenant claim on a showing of only nominal damages." *Id.*

### Defendants Failed to Make Appropriate Motions

56.    Defendants breached the standard of care by failing to make appropriate motions to exclude evidence and failing to file dispositive pre-trial and trial motions.

57.    Defendants also breached the standard of care by failing to file a Daubert motion with respect to Guidance's damage expert, Brian McDonald, Ph.D.  The trial court specifically noted that Defendants "also could have objected to McDonald's future-damages theory on *Daubert* grounds, but they did not."  *See* August 26, 2010 Memorandum Opinion, pp. 39-40; 54-55.  Had an appropriate *Daubert* motion been filed, it would have been granted and there would have been no evidence to support the jury verdict.  *Id.* at 40 and 55 n 24.

58.    Defendants further breached the standard of care by failing to file or otherwise make a Rule 50(a) motion, seeking judgment on the contract claim at the close of Guidance's case.  Given Guidance's position at that time that the contract was unambiguous, had Defendants moved for judgment, it would have been granted in Clients' favor.

59.    Defendants also breached the standard of care by failing to file or otherwise make a Rule 50(a) motion for judgment on Guidance's claim for future

damages.  The court held that the failure to move for judgment on the damages issue pursuant to Rule 50(a) precluded Clients' ability to seek judgment as a matter of law post trial under Rule 50(b).  *See* August 26, 2010 Memorandum Opinion, p. 33.

60.     Defendants further breached the standard of care by failing to file a Rule 50(a) motion for judgment on Guidance's implied covenant of good faith and fair dealing claim.  That failure permitted the jury to find in favor of Guidance without Guidance proving all of the elements of the cause of action.   The failure also prevented Clients from any meaningful review of the verdict.  As the trial court noted, "the Defendants cannot raise a rule 50(b) motion challenging the sufficiency of the evidence on these two elements because they did not raise a rule 50(a) motion challenging the sufficiency of the evidence as to these elements during trial."  *See* October 14, 2010 Opinion, p. 75.

### Defendants Failed to Preserve Key Issues for Appeal

61.     Defendants breached the standard of care by failing to preserve key issues for appeal including, but not limited to, failing to preserve the choice of law issue. Specifically, New Mexico applies the doctrine of lex loci delicti – the law of the place where the wrong occurred.  The court had prohibited Guidance from recovering actual (as opposed to nominal) damages in connection with the New Mexico Unfair Practices Act claim.  Defendants failed to preserve the issue that because there could be no actual damages, there could be no harm that occurred in New Mexico, and thus New Mexico law could not apply.  *See* July 1, 2010 Memorandum Opinion, pp. 24-29.

62.     Had Defendants preserved that issue, the appellate court would have ruled that New Mexico law did not apply and therefore the verdict on NMUPA claim would have been overturned.

16

63.     Defendants' advice, actions and omissions during their representations of Clients failed to meet the minimum standard of care.

64.     As a direct and proximate result of the Defendants' negligence, breach of contract, breaches in the standard of care, actions, omissions, and erroneous legal advice, Clients sustained substantial damages.

## COUNT I
## Legal Malpractice

65.     Paragraphs 1-64 above are incorporated by reference herein.

66.     At all times relevant to the events described in this Complaint, Defendants had an attorney-client and fiduciary relationship with Clients.

67.     In their representation of Clients, Defendants owed Clients the duty to use the care and skill ordinarily exercised in like cases by reputable members of the legal profession, to abide by the operative professional rules, and to use reasonable diligence and skill in carrying out that representation.

68.     In their representation of Clients, Defendants neglected a reasonable duty of care and otherwise breached their duties to Clients and committed professional malpractice.

69.     Defendants breached their duties, were negligent and fell below the applicable standard of care in the preparation, investigation, evaluation, and trial of the Underlying Case, including, but not limited to, the following:

a.      failure to give proper legal advice with respect to the terms of the Agreement;

b.      failure to adequately investigate the facts of the Underlying Case;

c.      failure to adequately investigate the claims made by Guidance;

d.      failure to ascertain key witnesses;

e.      failure to properly prepare the case and witnesses;

f.      failure to adequately engage in and conduct pre-trial discovery;

g.      failure to adequately prepare for and conduct the trial;

h.      failure to make appropriate pre-trial motions and motions at trial to ensure that the jury did not consider improper and prejudicial evidence;

i.      failure to make appropriate objections and motions to preserve issues for appeal;

j.      failure to object to erroneous jury instructions;

k.      failure to retain adequate experts;

l.      failure to introduce evidence at trial to rebut Guidance's claims;

m.      failure to provide the court with the correct law;

n.      failure to adequately communicate with Clients regarding the Underlying Case; and

o.      submitting erroneous jury instructions and verdict form/inviting error.

70.    As a direct and proximate cause of Defendants' breaches of the standard of care and legal malpractice, Clients suffered adverse judgments entered against them; were limited as to meaningful appellate recourse; were forced to pay a substantial amount to settle with Guidance to mitigate Clients' losses, incurred legal expenses that were not earned, and were caused to incur additional costs, fees and expenses.

WHEREFORE, Clients seek judgment in their favor in an amount in excess of $15 million in compensatory damages; the Clients' attorneys fees incurred in this action; the Clients' attorneys fees incurred in the Underlying Case; the Clients' attorneys fees incurred in the post-trial proceedings; pre and post judgment interest; and for such other and further relief on behalf of Clients that this Honorable Court deems just and proper.

**COUNT II**
**Breach of Contract And Of The Covenant Of Good Faith And Fair Dealing**

71.      Paragraphs 1-70 above are incorporated by reference herein.

72.      Defendants entered into a contract to provide legal services to, and for the benefit of, Clients in the Underlying Case.

73.      Defendants breached their contract with Clients, and breached the covenant of good faith and fair dealing, by breaching the terms of the contract and failing to provide proper and adequate legal services including, but not limited to:

a.      failure to give proper legal advice with respect to the terms of the Agreement;

b.      failure to adequately investigate the facts of the Underlying Case;

c.      failure to adequately investigate the claims made by Guidance;

d.      failure to ascertain key witnesses;

e.      failure to properly prepare the case and witnesses;

f.      failure to adequately engage in and conduct pre-trial discovery;

g.      failure to adequately prepare for and conduct the trial;

h.      failure to make appropriate pre-trial motions and motions at trial to ensure that the jury did not consider improper and prejudicial evidence;

i.      failure to make appropriate objections and motions to preserve issues for appeal;

j.      failure to object to erroneous jury instructions;

k.      failure to retain adequate experts;

l.      failure to introduce evidence at trial to rebut Guidance's claims;

m.      failure to provide the court with the correct law;

n.      failure to adequately communicate with Clients regarding the Underlying Case; and

o.      submitting erroneous jury instructions and verdict form/inviting error.

19

74.     Clients have satisfied all conditions precedent.

75.     As a direct and proximate cause of Defendants' breach of contract, Clients suffered adverse judgments entered against them; were limited as to meaningful appellate recourse; were forced to pay a substantial amount to settle with Guidance to mitigate their losses, incurred legal expenses that were not earned; and were caused to incur additional costs, fees and expenses.

WHEREFORE, Clients seek judgment in their favor in an amount in excess of $15 million in compensatory damages; the Clients' attorneys fees incurred in this action; the Clients' attorneys fees incurred in the Underlying Case; the Clients' attorneys fees incurred in the post-trial proceedings; pre and post judgment interest; and for such other and further relief on behalf of Clients that this Honorable Court deems just and proper.

## COUNT III
## Breach of Fiduciary Duty

76.     Paragraphs 1-75 above are incorporated by reference herein.

77.     Defendants, as Clients' attorneys, stood in a fiduciary relationship with Clients, and as such Defendants owed fiduciary duties to Clients.  Among those duties, Defendants had the obligation to ensure that Clients were properly represented in the Underlying Case.

78.     Defendants breached their fiduciary duties to Clients by Defendants' actions and omissions in the Underlying Case as set forth in detail above.

79.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Clients suffered adverse judgments entered against them; were limited as to meaningful appellate recourse; were forced to pay a substantial amount to settle with

20

Guidance to mitigate their losses, incurred legal expenses that were not earned; and were caused to incur additional costs, fees and expenses.

WHEREFORE, Clients seek judgment in their favor in an amount in excess of $15 million in compensatory damages; the Clients' attorneys fees incurred in this action; the Clients' attorneys fees incurred in the Underlying Case; the Clients' attorneys fees incurred in the post-trial proceedings; pre and post judgment interest; and for such other and further relief on behalf of Clients that this Honorable Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby request a trial by jury on all claims brought herein that may be tried to the jury.

Respectfully submitted,


 _/s/ Stevan Douglas Looney____
Stevan Douglas Looney
Sutin, Thayer & Browne
6565 Americas Parkway, NW
Two Park Square, Suite 1000
Albuquerque, New Mexico  87110
(505) 883 2500
sdl@sutinfirm.com


Richard M. Barnes
Jeffrey J. Hines
Cheryl Zak Lardieri
Goodell DeVries Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
410-783-4000
rmb@gdldlaw.com
jjh@gdldlaw.com
clardieri@gdldlaw.com
*Attorneys for Plaintiffs*

2287167.doc

21