IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

    Plaintiffs,
v.                No. 1:12-CV-00104-MCA/ACT

LEWIS AND ROCA, LLP
and THOMAS P. GULLEY, ESQ.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Lewis and Roca, LLP's ("Lewis and Roca") Motion to Compel [Doc. 47] filed November 5, 2012 ("First Motion"). Dentsply International, Inc. ("Dentsply") and Tulsa Dental Products, LLC, ("TDP" and collectively "Plaintiffs") filed Plaintiffs' Opposition to Lewis And Roca LLP's Motion to Compel [Doc. 50] on December 3, 2012 ("Response to First Motion"). Lewis and Roca's Reply in Support of Motion to Compel (Doc. 47) [Doc. 61] was filed on January 3, 2013 ("Reply to First Motion").

**THIS MATTER** also comes before the Court on Lewis and Roca's Motion for Leave to File Surreply in Support of Motion to Compel (Doc. 47) [Doc. 74] filed on March 8, 2013 ("Motion for Surreply"). Plaintiffs' Response in Opposition to Lewis and Roca, LLP's Motion for Leave to File Surreply in Support of Motion to Compel [Doc. 81] was filed on March 25, 2013 ("Response to Surreply"). Lewis and Roca, LLP's Reply in Support of Motion for Leave to file Surreply in Support of Motion to Compel (Doc.74) [Doc. 85] was filed on April 8, 2013 ("Reply to Surreply").

**THIS MATTER** also comes before the Court on Lewis and Roca's Motion to Compel Answers to Deposition Questions [Doc. 75] filed March 8, 2013 ("Second Motion").[1] Plaintiffs' Response in Opposition to Defendant Lewis and Roca LLP's Motion to Compel Answers to Deposition Questions [Doc. 78] was filed on March 22, 2013 ("Response to Second Motion"). Lewis and Roca's Reply in Support of Motion to Compel Answers to Deposition Questions (Doc. 75) [Doc. 86] was filed on April 8, 2013 ("Reply to Second Motion"). The Court held a hearing on these matters on May 8, 2013. [Doc. 105.]

The Court, having heard the argument of counsel, reviewed the submissions of the parties, considered the relevant law, and being fully advised in the premises, finds that Defendants' First Motion is well taken and will be GRANTED, the Motion for Leave to file a Surreply is DENIED as moot, and Defendants' Second Motion is well taken and will be GRANTED.

## INTRODUCTION

This legal malpractice action arose from legal services provided by Lewis and Roca and Thomas Gulley, Esq. ("Gulley" and collectively "Defendants") to Plaintiffs when they were sued in a contract dispute by Guidance Endodontics, LLC ("Guidance").[2] [Doc. 47 at 1; Doc. 50 at 1.] The underlying litigation was tried to a jury which returned a verdict on October 9, 2009, in favor of Guidance in excess of $44 million, including compensatory, nominal, and punitive

---

[1] Since the arguments with regard to the written discovery parallel the arguments with respect to the deposition questions and because Defendants incorporate by reference their First Motion and Reply to First Motion into their Second Motion, the Court will consider them together in this Memorandum Opinion and Order.

[2] The underlying breach of contract case was styled *Guidance Endodonitcs, LLC v. Dentsply International, Inc., et. al,* No. 1:08-cv-01101-JB-KBM (D.N.M. 2011) ("underlying litigation"). The contract at issue was the Supply Agreement. [UL Doc. 434 at 3.]

2

damages. [UL Doc. 440;[3] Doc. 50 at 1; Doc. 47 at 2.] Finding this amount excessive, the trial judge, the Honorable James O. Browning, ordered a remittitur of the nominal and punitive damages so that the judgment against Dentsply and TDP in the underlying litigation totaled $8,160,002.00. *Id.*[4] In the underlying litigation, Judge Browning offered Guidance the option of accepting the remittitur or "should Guidance Endodontics reject the Court's remitted award, the Court will conduct a full-blown retrial." *Guidance Endodontics,* 08-cv-01101-JB-KBM, Memorandum Opinion and Order [UL Doc. 632 at 49] filed on May 9, 2011.

After the trial, Plaintiffs hired Morgan Lewis & Bockius, LLP ("Morgan") as counsel for purposes of post-trial matters and the appeal. [Doc. 50 at 1.] Defendants remained counsel of record to Plaintiffs until June of 2011. [UL Doc. 641.] In August 2011, with the assistance of Morgan, Plaintiffs settled the underlying litigation for $11,500,000.00, an amount exceeding the remittitur. [Doc. 47 at 2; UL Doc. 672 (Stipulation of Dismissal filed August 19, 2011.] At the May 8, 2013, hearing, counsel explained that while Defendants conducted post-trial motions practice through the Court's ruling on the remittitur, they were not included in any discussions with regard to the option to settle the underlying case. Plaintiffs additionally retained Goodell

---

[3] Docket entries from the underlying litigation are cited as "UL Doc." Otherwise, the citations are to docket entries in the instant case.

[4] "When a court concludes that there was error only in the excessive damage award, but not error tainting the finding of liability, it may order a remittitur or grant a new trial if the plaintiff refuses to accept the remittitur." *Klein v. Grynberg*, 44 F.3d 1497, 1504 (10th Cir. 1995). "A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.,* 249 F. App'x 63, 80-81 (10th Cir. 2007)(quoting *Johansen v. Combustion Eng'g*, 170 F.3d 1320, 1331 (11th Cir. 1999)). "No judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1225 (10th Cir. 2004). The plaintiff therefore has "the option of a new trial in lieu of remitting a portion of the jury's award." *Sloan*, 360 F.3d at 1225.

DeVries Leech & Dunn, LLP ("Goodell") to pursue this legal malpractice action. [Doc. 50 at 1 – 2.][5]

In the instant lawsuit, Plaintiffs assert that Defendants' alleged breach of the standard of care in the underlying litigation forced them to settle the matter. [Doc. 1 at 18, 20.] Plaintiffs seek damages of the full amount paid to settle the underlying litigation, attorney fees incurred in the underlying litigation, attorney fees incurred in post-trial and settlement proceedings, attorney fees for the instant malpractice action, and pre and post judgment interest all of which totals in excess of fifteen million dollars ($15,000,000.00). [Doc. 1 at 18, 20, and 21.]

Defendants served written discovery on Plaintiffs seeking documents generated during the underlying litigation, post-trial, and settlement proceedings. [Doc. 47 at 2; Doc. 47-1.] Plaintiffs objected to several discovery requests on the grounds the information sought is protected by the attorney-client privilege or work-product doctrine. [Doc. 47-1.] In January 2013, Defendants deposed Plaintiffs' in-house counsel, Brian Addison, in Baltimore, Maryland. [Doc. 75 at 1 – 2; Doc. 78 at 2, n. 2.] During the deposition, Mr. Addison was instructed not to answer three questions on the basis of attorney-client privilege. [Doc. 75 at 2.][6]

---

[5] In their Response to the First Motion, Plaintiffs refer to Morgan Lewis & Bockius and Goodell DeVries Leech and Dann collectively as "Successor Counsel." [Doc. 50 at 2, n.2.] At the hearing of this matter, Plaintiffs' counsel clarified that the Goodell law firm was retained only with respect to the alleged malpractice case and Morgan was only retained with regard to post-trial matters in the underlying litigation. However, in their privilege log, Plaintiffs describe Goodell as being included in communications regarding settlement and post-trial matters and Morgan being included in communications regarding malpractice. [Doc. 66-1 at 1 – 2.] To the extent a privilege is claimed for communications to Goodell with respect to post-trial and settlement matters, the rulings set forth in this opinion are applicable to those communications.

[6] The three questions are:

Were you advised by Morgan Lewis if the case were retried that the decision would not yield an award of future damages to Guidance?

Did you receive advice from Morgan Lewis that retrial of the case would yield a decision that there would be no punitive damages award?

Did you receive advice from Morgan Lewis that retrial of the case would yield an award to Dentsply on its counterclaim?

4

Defendants argue that Plaintiffs have failed to establish that any privilege is applicable, and have failed to produce a privilege log with respect to the written discovery [Doc. 47 at 3 – 4]; that Plaintiffs have implicitly waived the attorney-client privilege because they have put "at issue" the analysis and advice of counsel which led them to settle the case [Doc. 47 at 4 – 7; Doc. 75 at 2 – 3]; that Federal Rule of Civil Procedure 26(b)(3)(A)(i-iii) warrants production of any documents withheld under the work-product doctrine [Doc. 47 at 7 – 8]; that Rule 11-503(D)(3) NMRA provides a specific exception to the general rule of attorney-client privilege, which they claim is applicable in this case [Doc. 75 at 2]; and that designating Howard M. Radzely, Esq., a former attorney at Morgan involved in the underlying litigation, as a hybrid fact/expert witness, waives the attorney-client privilege [Doc. 75 at 3].

Plaintiffs argue that under the Federal Rules of Civil Procedure, they are not required to produce a privilege log, although they subsequently produced one; that there has not been any waiver of the privilege; and that Defendants have not met their burden to overcome the work-product doctrine. [Doc. 50.] Plaintiffs also argue that the exception to the attorney-client privilege under New Mexico Rule 11-505(D)(3) does not apply in this case; that the settlement of the underlying case does not waive the attorney-client privilege; and that designating Mr. Radzely as a witness does not waive the attorney-client privilege. [Doc. 78.]

The parties do not discuss the applicability of a particular privilege or work product protection to any specific document; instead, they argue the general validity and effect of the privileges to the discovery requested and deposition questions asked under the facts and circumstances of this case. Accordingly, the Court will address the applicability of the attorney-client privilege and work-product doctrine as they pertain to the particular facts of this case.

---

[Doc. 75 at 2; Doc. 75-1 at 2.]

## **RELEVANT LAW**

While discovery in federal court is very broad, the attorney-client privilege and the attorney work-product doctrine set boundaries on what litigants can obtain. In a diversity case, state law governs the scope of the attorney-client privilege, whether there has been a waiver, and the scope of any waiver. Federal law, however, continues to govern all issues related to the work-product doctrine. *Anaya v. CBS Broad., Inc*., 251 F.R.D. 645, 649 (D.N.M. 2007).

1. Scope of Discovery.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The scope of discovery under the federal rules is broad and "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp*., 50 F.3d 1511, 1520 (10th Cir. 1995)(citation omitted). The attorney-client privilege and work-product protection, however, limit the broad scope of permissible discovery. *Anaya,* 251 F.R.D. at 650 (D.N.M. 2007).

2. Attorney-Client Privilege.

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). The privilege's purpose is "to encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Pursuant to rule 501 of

the Federal Rules of Evidence, state law supplies the rules concerning attorney-client privilege in diversity cases. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir.1998).

Under New Mexico law, the attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." *S.F. Pac. Gold Corp. v. United Nuclear Corp., 2007-NMCA-133, 143 N.M. 215, 221, 175 P.3d 309, 315*; N.M.R.A. 11-503(B). The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived. *Pina v. Espinoza*, 2001-NMCA-055, ¶ 24, 130 N.M. 661, 29 P.3d 1062, 1069. "The bald assertion that production of the requested information would violate a privilege [provided by law] is not enough. The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor. General objections without specific support may result in waiver of the objections." *United Nuclear Corp. v. Gen. Atomic Co*., 96 N.M. 155, 629 P.2d 231, 293 (1980) (internal quotations and citation omitted).

The attorney-client privilege in New Mexico is expressly provided for and governed by New Mexico's Rules of Evidence. *Allen v. LeMaster*, 2012-NMSC-001, 267 P.3d 806, 813 (citing Rule 11–503; *Pub. Serv. Co. of N.M. v. Lyons*, 2000–NMCA–077, ¶¶ 11–13, 129 N.M. 487, 10 P.3d 166)). Although New Mexico's attorney-client privilege generally applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client," Rule 11–503(B), "[t]here is no privilege ... [a]s to a communication relevant to an issue of breach of duty by the lawyer to the lawyer's client," *Allen,* 267 P.3d at 813 (citing Rule 11–503(D)(3)). Rule 11-511 NMRA and its general waiver provisions provide that any of New Mexico's evidentiary privileges can be waived by the holder of the privilege if he or she

"voluntarily discloses or consents to disclosure of any significant part of the matter or communication." *Id*. (quoting Rule 11-511 NMRA.)

   3. Privilege Log.

Rule 26(b)(5) of the Federal Rules of Civil Procedure governs privilege logs. *Anaya*, 251 F.R.D. at 651. Rule 26(b)(5) states:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege protection.

*Id*. (quoting Fed.R.Civ.P. 26(7)).  "The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege." *Id.* citations omitted).

   4. The At-Issue Waiver Doctrine

A person who places privileged matters "at-issue" in the litigation can be said to have implicitly consented to disclosure. *Pub. Serv. Co. of New Mexico v. Lyons*, 2000-NMCA-077, 129 N.M. 487, 492, 10 P.3d 166, 171 (citation omitted). In *Lyons*, the New Mexico Court of Appeals explained that "we believe the issue of waiver should be governed by, and limited to, Rule 11-511 (waiver of privilege by voluntary disclosure), in the absence of any other provision specifically addressing the issue." *Id.*, 129 N.M. at 494.  To support a finding of waiver, New Mexico requires an offensive or direct use of privileged materials. *S.F. Pac. Gold Corp*, 143 N.M. at 226.[7]  The New Mexico Court of Appeals adopted the approach to waiver that was put

---

[7] Citing *Lyons*, 2000–NMCA–077, ¶ 23, 129 N.M. 487, 10 P.3d 166; Rule 11–511 (stating that the holder of the privilege waives the privilege by voluntarily disclosing or consenting "to disclosure of any significant part of the matter or communication," unless the disclosure itself is a privileged communication); *Gingrich v. Sandia Corp.*, 2007–NMCA–101, ¶¶ 12–20, 142 N.M. 359, 165 P.3d 1135 (affirming the district court's ruling that a defendant waived attorney-client privilege when that defendant made " 'direct or offensive' " use of an attorney's report), cert.

forth in *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 864 (3d Cir.1994), explaining that "[t]he restrictive approach we adopt is consistent with the long-held view that the attorney-client privilege should act as a shield and not a sword." *Id.*, 129 N.M. at 495. The New Mexico Court further explained that waiver is recognized "only where a party 'seeks to limit its liability by describing that advice and by asserting that he relied on that advice.' " *S.F. Pac. Gold Corp.*, 143 N.M. 215, 226 (citing *Lyons*, 2000–NMCA–077, ¶¶ 21–22, 129 N.M. 487, 10 P.3d 166. (quoting *Rhone–Poulenc*, 32 F.3d at 863).

The New Mexico Court of Appeals construes the *Rhone–Poulenc* approach to waiver to include finding waiver "where direct use [of the privileged materials] is anticipated because the holder of the privilege must use the materials at some point in order to prevail." *S.F. Pac. Gold Corp.*, 143 N.M. at 226 (quoting *Lyons*, 2000–NMCA–077, ¶¶ 22, 28, (stating that waiver depends on "the way in which the client will likely prove the assertion" and that the privilege is not waived if the client plans to prove its assertion in ways that do not include the privileged communication (internal quotation marks and citation omitted)(emphasis added)). Under *Lyons*, where a party relies on an attorney's advice to advance a claim or defense, that party has implicitly "consented to disclosure" of those communications within the meaning of Rule 11-511. *Gingrich*, 142 N.M. at 364.

5. <u>Work Product Doctrine</u>

In diversity cases, Rule 26(b)(3) of the Federal Rules of Civil Procedure governs work-product issues. *Frontier Refining*, 136 F.3d at 702 n. 10. Rule 26(b)(3) states:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under ... this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the

---

denied, 2007–NMCERT–007, 142 N.M. 330, 165 P.3d 327; *Skaggs v. Conoco, Inc.,* 1998–NMCA–061, ¶ 21, 125 N.M. 97, 957 P.2d 526 (stating that the defendants did not waive their privilege because there was no showing that they relied on the documents to prove their defense).

> other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). "[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs*, 241 F.Supp.2d 1342, 1358 (D.N.M.2002)(Smith, Magistrate J.)(citing *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). The attorney work-product doctrine "is intended only to guard against divulging the attorney's strategies and legal impressions." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995). Documents or other items that do not reflect the attorney's mental impressions are not protected by the work product doctrine. *United States v. Nobles*, 422 U.S. at 238, 95 S.Ct. 2160 ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); *In re Grand Jury Proceedings*, 658 F.2d 782, 784–85 (10th Cir.1981)("Such mental impressions are a prerequisite to the invocation of the work product doctrine."). The party asserting the work-product protection has the burden of demonstrating that it applies and that it has not been waived. *Kovacs v. Hershey Co.*, No. 04-cv-01881, 2006 WL 2781591, at * 10 (D.Colo. 2006). A blanket assertion that the work-product doctrine applies is insufficient to meet that burden. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995). For the work-product doctrine to apply, the asserting party must show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative. Fed.R.Civ.P. 26(b)(3).

If the party asserting work-product protection establishes entitlement to the protection, rule 26(b)(3) allows production of attorney work-product materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).

## DISCUSSION

1. Although Plaintiffs Failed to Provide a Timely, Complete Privilege Log, the Court Does Not Find Waiver on that Basis.

As an initial matter, Defendants argue that Plaintiffs have not established that the attorney-client privilege is applicable primarily because Plaintiffs have not provided a privilege log. [Doc. 47 at 3.] Plaintiffs counter that because Fed. R. Civ. P. 26(b)(5) does not require them to produce a privilege log, they complied with Rule 26(b)(5) in other ways. [Doc. 50 at 5 - 8.] Nonetheless, after Defendants filed their Motion, Plaintiffs produced a privilege log. [Doc. 61-1.] Plaintiffs also produced a supplemental privilege log on January 29, 2013. [Doc. 66 and 66-1.]

While Rule 26(b)(5)(A) does not specifically require a privilege log, the law in the Tenth Circuit "is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege." *Anaya*, 251 F.R.D. at 651. Plaintiffs are required to produce a privilege log for all responsive documents for which they are claiming a privilege exists and it appears that they have now done so.

Since Plaintiffs have produced a privilege log and since the Court finds waiver based on other grounds, the Court does not find waiver based on Plaintiffs' untimely and incomplete privilege log. However, Plaintiffs are cautioned that waiver may be based on their failure to produce a privilege log in the future.

2. The Documents Requested Are Privileged

Defendants argue that the documents requested are not privileged.  The Court disagrees. Citing *Allen*, Defendants correctly state that under New Mexico law, there is no attorney-client privilege when the communication is relevant to an issue of breach of duty by the lawyer to the lawyer's client. [Doc. 47 at 5.] In the *Allen* case, the privilege being discussed was between the client and his former attorney who the client claimed provided "ineffective assistance" during his criminal trial. *Allen*, 267 P.3d at 807.[8] In this case, it is not the communications between the clients and their former attorneys at issue. The communications sought by Defendants are the communications between their former clients, Plaintiffs, and their successor attorneys.  Under these circumstances, there is no exception to the attorney-client privilege as stated in *Allen*.

Further, communications with regard to post-trial matters and settlement, as opposed to the alleged malpractice during trial, are not communications relevant to an issue of breach of duty by the lawyer to the lawyer's client.  Rather, those communications are relevant to Plaintiffs' claim for damages and Defendants' defenses.  Plaintiffs' attorneys point out that they are not alleging that Defendants committed any malpractice after the verdict. [Doc. 50, p. 2; Doc. 78, p. 4.] Accordingly, the communications sought by Defendants between Plaintiffs and their successor counsel regarding malpractice matters are privileged.

3. Defendants Are Entitled To Documents Protected By The Attorney-Client Privilege Because Plaintiffs Have Implicitly Waived The Privilege By Putting Their Attorney's Advice At-Issue

While the Court finds that the communications regarding post-trial decisions and settlement are privileged, the privilege has been waived because Plaintiffs have put their

---

[8] Claims of ineffective assistance are akin to allegations of legal malpractice.  See, e.g., Id., 267 P.3d at 807 – 08, ("Allen's ineffectiveness claims allege that his trial attorneys failed to conduct an adequate pretrial investigation of his social and mental health history and, as a result, failed to present evidence at either the guilt or penalty phase of trial . . . .)

attorney's advice with regard to settling this matter at issue in this case. Defendants argue that the "at-issue" wavier doctrine constitutes the implicit waiver of the privilege in this case. [Doc. 47 at 4 – 7.] Specifically, Defendants argue that by claiming damages that include the full amount of the settlement and attorney-fees for work performed after the verdict, Plaintiffs have necessarily put "in issue" the analysis and advice surrounding Plaintiffs' decision to settle the underlying lawsuit for more than the remittitur. [*Id*. at 6] Plaintiffs argue that under the *Rhone* test, adopted by the New Mexico courts, there has not been a voluntary waiver of the privilege. [Doc. 50 at 9 – 15.]

As discussed above, the New Mexico courts have adopted the restrictive rule that there is a voluntary waiver of the attorney-client privilege where the client directly uses privileged materials to prove a claim. *Lyons*, 129 N.M. at 495. There is also a voluntary waiver where the direct use of the privileged materials is anticipated because the holder of the privilege must use the privileged materials at some point in order to prevail. *S.F. Pac. Gold Corp*., 143 N.M. at 226.

In this case, Plaintiffs claim that the alleged malpractice forced them to settle the underlying litigation for more than the remitted amount. [Doc. 1 at 18, 20.] In response, Defendants ask "why did Plaintiffs pay $11.5 million to settle when they could have forced Guidance to choose an $8.1 million remittitur or a new trial, which new trial Plaintiffs now assert would have produced . . . a judgment entirely in their favor . . .?" [Doc. 61 at 5 – 6]. Defense counsel pointed out at the hearing that Plaintiffs "were in the cat-bird seat." Plaintiffs could have told Guidance that they would pay the remitted amount and no more. If Guidance did not accept the remitted amount, a new trial would be conducted in which Plaintiffs could have cured most, if not all, of the deficiencies they currently allege were committed by Defendants.[9] In that

---

[9] Plaintiffs' allege that Defendants breached the standard of care by failing to properly investigate, evaluate, and develop the factual and legal issues in the underlying litigation; by failing to advise Plaintiffs on central issues and

13

scenario, Plaintiffs would eliminate the damages awarded against them. Instead, Plaintiffs choose to settle the case for over $3 million more than the remittitur.

If Plaintiffs wish to hold Defendants responsible for the settlement amount, plus fees and costs, they cannot simply ask Defendants take them on their word that settling the lawsuit for over $3 million more than the remittitur was their best course of action. Plaintiffs must establish that this element of their damages was proximately caused by Defendants' actions.[10] In order to establish that Defendants' actions, as opposed to the decisions of the Successor Attorneys, caused Plaintiffs to settle for $11.5 million dollars, it appears Plaintiffs will need to use privileged materials. For example, Plaintiffs will need to establish that settling the case was the best choice among the options available to them, including the option of a new trial that would have resulted in no damages being assessed against them. The only evidence that could possibly establish these facts are the communications with regard to the strategy, thought process, and advice provided by their attorneys. In other words, by claiming damages beyond the jury verdict, Plaintiffs have placed their decision to settle squarely at issue. If Plaintiffs' decision to settle rather than force Guidance to accept the remittitur or a new trial was based on the advice of

---

potential liability, including the possibility of punitive damages; by failing to develop a theory of the case prior to trial; by failing to understand the contractual language or understand the interplay between the contract's provisions; by failing to conduct adequate discovery; failing to retain appropriate experts and introduce evidence; failing to object to jury instructions; by "inviting error"; by failing to make appropriate motions; and by failing to preserve key issues for appeal. [Doc. 1 at 8 – 12, 15, 16.]

[10] The elements of a legal malpractice claim in New Mexico are (1) the employment of the defendant attorney, (2) the defendant attorney's neglect of a reasonable duty, and (3) a loss to the plaintiff proximately caused by the defendant attorney's neglect. *Bassett v. Sheehan*, 2008-NMCA-072, 144 N.M. 178, 180, 184 P.3d 1072, 1074. As with all tort claims, Plaintiffs must prove the elements of causation and damages. *Oja v. Howmedica, Inc.*, 111 F.3d 782, 791 (10th Cir. 1997).

counsel, they must use those communications to establish the propriety of that decision, and have, therefore, waived their privilege to any communications with regard to that decision.[11]

Plaintiffs argue that Defendants have not identified a single instance when they have directly used privileged materials in this case or asserted they would use such information in the future. [Doc. 50 at 11.] Indeed, Plaintiffs have specifically advised Defendants that they have no intention of using privileged information to prove their case and reiterated this position at the hearing. [Doc. 50 at 11 – 12.] While Plaintiffs explain they will use "documents and testimony from the Underlying Case, as well as the court's opinions and rulings, information gathered from discovery in this case, and witness and expert testimony" to prove their claims, they offer no explanation of how this evidence will establish their claim for damages beyond the amount of the remittitur. [Doc. 50 at 12.] As explained above, it is anticipated that the only way Plaintiffs are able to prove their damages claims would be to use privileged materials that led them to the conclusion that settlement was their best course of action and was, therefore, proximately caused by Defendants' malpractice. Consequently, Plaintiffs will be ordered to produce the documents requested.

4. <u>Defendants Are Entitled to Disclosure of Documents Protected by the Work-Product Doctrine Because They Have Substantial Need of the Materials</u>.

As noted above, the attorney work-product doctrine "is intended only to guard against divulging the attorney's strategies and legal impressions." *Resolution Trust Corp.*, 73 F.3d at 266. If the party asserting work-product protection establishes entitlement to the protection, Fed. R. Civ. P. 26 (b)(3) allows production of attorney work-product materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the

---

[11] While the Court recognizes that there has been an implied waiver to privileged communications with regard to post-trial proceedings and the settlement, there has not been a waiver of privileged communications with regard to the malpractice lawsuit.

15

party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." In this case Defendants have made this showing.

Defendants argue that the only mechanism that they have to ascertain the reasoning and analysis employed by Plaintiffs in deciding to settle the underlying litigation is to obtain the documents requested. [Doc. 47 at 7.] The Court agrees. There is substantial need for documents prepared by Successor Counsel in the preparation of the Defendants' case. Defendants need the materials in order to evaluate and defend against the amount of damages claimed, as well as to prosecute their "comparative negligence" and "superseding and intervening cause" affirmative defenses. Defendants are unable to obtain the substantial equivalent of the materials by other means as they are completely in the possession and control of Plaintiffs' counsel. Accordingly, Plaintiffs will be ordered to produce the materials requested.

## CONCLUSION

The Court finds that by extending their damages claim to include post-trial costs, attorney fees, and the amount of settlement, Plaintiffs have placed "at issue" the analysis and advice of their attorneys which led them to choose settlement over other options available to them in post-trial proceedings. Therefore, Plaintiffs' implicitly waived the attorney-client privilege. Further, Defendants have shown a substantial need for the documents protected by the attorney work-product doctrine. Therefore,

1. Lewis and Roca, LLP's Motion to Compel [Doc. 47] is GRANTED. Plaintiffs will have 20 (twenty) days from the entry of this order to produce the requested materials;

2. Defendants' Motion to File Surreply in Support of Motion to Compel (Doc. 47) [Doc. 74] is DENIED as moot; and

3.  Lewis and Roca, LLP's Motion to Compel Answers to Deposition Questions [Doc. 75] is GRANTED. Defendants are to provide written answers to the questions at issue from Mr. Addison under oath or by Affidavit within ten (10) days of the entry of this Order.

**IT IS SO ORDERED.**

_____
ALAN C. TORGERSON
United States Magistrate Judge