IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

      Plaintiffs,

vs.                                                Civ. No. 12-104 KG/ACT

LEWIS AND ROCA, LLP
and THOMAS P. GULLEY, ESQ.,

      Defendants.

MEMORANDUM OPINION AND ORDER

Plaintiffs timely object to a MEMORANDUM OPINION AND ORDER (Doc. No. 131) (Memorandum Opinion and Order) entered by the United States Magistrate Judge on June 25, 2013 in which the Magistrate Judge granted LEWIS AND ROCA, LLP'S MOTION TO COMPEL (Doc. No. 47), filed November 5, 2012, and granted LEWIS AND ROCA, LLP'S MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS (Doc. No. 75), filed March 8, 2013 (collectively, the Motions to Compel). *See* PLAINTIFFS [SIC] OBJECTION TO MEMORANDUM OPINION AND ORDER [DOC. 131] AND REQUEST FOR EXPEDITED HEARING AND RULING (Doc. No. 139) (Plaintiffs' Objection), filed July 10, 2013. Plaintiffs also ask the Court to hold a hearing on Plaintiffs' Objection. Having reviewed Plaintiffs' Objection as well as DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO MEMORANDUM OPINION AND ORDER (Doc. No. 145) (Response), filed July 29, 2013, and PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' OBJECTION TO MEMORANDUM OPINION AND ORDER (Doc. No. 152), filed August 9, 2013, the Court determines that a

hearing is unnecessary to decide whether Plaintiffs' Objection has merit.  Hence, the Court will proceed to analyze the issues raised in Plaintiffs' Objection and the accompanying briefs.

A.  *Background*

      *1.  The Facts*

      This is a legal malpractice case arising from a lawsuit between Plaintiffs and Guidance Endodontics, LLC (Guidance) regarding a contract dispute (Underlying Case). Defendants represented Plaintiffs in the Underlying Case.  The Honorable United States District Court Judge James O. Browning tried the Underlying Case to a jury from September 21, 2009 through October 9, 2009.  The jury awarded Guidance over $44 million in compensatory, nominal, and punitive damages.  Judge Browning subsequently ordered a remittitur of the nominal and punitive damages thereby reducing the judgment against Plaintiffs to $8,160,002.00.  Judge Browning provided Guidance with the option of either accepting the remittitur or re-trying the case.

      Defendants apparently conducted post-trial motions practice until Judge Browning made his remittitur determination and remained counsel of record for Plaintiffs until June 2011.  In November 2009, Plaintiff Dentsply International, Inc. (Dentsply) retained Morgan, Lewis, & Brockius, LLP (Morgan) as counsel for post-trial and appellate matters.  In August 2011, Plaintiffs settled the Underlying Case for $11,500,000.00.  Defendants were not involved in the settlement.  Plaintiffs then retained Goodell, DeVries, Leech, & Dann, LLP (Goodell) to pursue this legal malpractice case. The Court will refer to Goodell and Morgan collectively as Successor Counsel.

      *2.  The COMPLAINT AND DEMAND FOR TRIAL BY JURY (Doc. No. 1) (Complaint)*

Plaintiffs bring one count of legal malpractice against both Defendants and one count of breach of contract and of the covenant of good faith and fair dealing against both Defendants.[1] Plaintiffs allege in their Complaint that Defendants breached the standard of care in litigating the Underlying Case, failed to develop a theory of the case before trial, failed to conduct adequate and appropriate discovery, failed to retain appropriate expert witnesses or to elicit necessary expert testimony, failed to object to erroneous jury instructions and actually invited error, failed to make appropriate motions, and failed to preserve key issues for appeal.  Plaintiffs further allege in the Complaint that Defendants' actions directly and proximately caused, among other things, Plaintiff "to pay a substantial amount to settle with Guidance to mitigate Clients' losses…."  Complaint at ¶¶ 70, 75.  Plaintiffs seek a judgment in excess of fifteen million dollars in compensatory damages including, among other damages, "attorneys [sic] fees incurred in the post-trial proceedings…."  *Id*. at 18, 20.  Defendants assert several affirmative defenses including comparative fault and superseding and intervening cause.  DEFENDANTS' ANSWER (Doc. No. 16) at 12, filed February 29, 2012.

   *3. The Motions to Compel*

Defendant Lewis and Roca, LLP (Lewis) seeks to compel production of documents from Dentsply regarding communications between Dentsply and Successor Counsel which relate to the post-trial and settlement proceedings.[2]  In addition, Lewis seeks to compel Brian Addison, Dentsply's in-house counsel during the time period relevant to this case, to answer deposition

---

[1] On June 6, 2012, the parties stipulated to a voluntary dismissal of a breach of fiduciary claim. *See* STIPULATION OF VOLUNTARY DISMISSAL OF COUNT III OF THE COMPLAINT WITHOUT PREJUDICE (Doc. No. 32).

[2] The Magistrate Judge noted in his Memorandum Opinion and Order that Dentsply's privilege log included Goodell in privileged communications concerning post-trial and settlement matters. Memorandum Opinion and Order at 4 n.5.  Consequently, the Magistrate Judge decided that "the

questions about communications he may have received from Morgan concerning a potential retrial of the Underlying Case.  Dentsply objects to these discovery requests on the basis of attorney-client privilege and/or the work-product doctrine. Lewis counters that Plaintiffs waived any attorney-client privilege regarding post-trial matters when Plaintiffs decided to put "at issue" damages resulting from the settlement and from post-trial attorneys' fees.[3]  Lewis asserts that the post-trial information which Dentsply argues is privileged is also relevant to its affirmative defenses of comparative fault and superseding and intervening cause.  Moreover, Lewis asserts that it has met its burden under Fed. R. Civ. 26(b)(3)(A) to overcome the work-product doctrine, i.e., that Lewis "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A).  Dentsply, on the other hand, contends it has not waived any privileges because (1) its malpractice claims are based solely on pretrial and trial conduct by Defendants, and (2) Dentsply did not retain Successor Counsel until after the malpractice had already occurred.  Dentsply notes that it has provided Lewis with 66 boxes of non-privileged documents in response to Lewis' requests for documents related to post-trial and settlement matters.  In addition, Dentsply reassures the Court that it will not use any privileged Successor Counsel information to support its claims in this lawsuit.

    *4.  The Memorandum Opinion and Order*

---

rulings set forth in this opinion are applicable to those communications." *Id*.  The Court will, likewise, apply its rulings to any purported privileged communications between Plaintiffs and Goodell.

[3] Lewis initially argued that Dentsply' failure to produce a privilege log waived any privilege Dentsply may have had with respect to the requested documents.  The Magistrate Judge, however, correctly concluded that the privilege log issue was moot because Dentsply subsequently produced a privilege log and a supplemental privilege log.  *See* Memorandum Opinion and Order at 11.

As a preliminary matter, the Court notes that The Magistrate Judge refers generally to "Plaintiffs" instead of to Dentsply and he refers to "Defendants" instead of to Lewis.  In order to avoid confusion, the Court will adhere to the Magistrate Judge's manner of reference to the parties.

The Magistrate Judge began his attorney-client privilege analysis by determining that the communications between Plaintiffs and Successor Counsel are indeed privileged. Then, The Magistrate Judge concluded that Plaintiffs waived their attorney-client privilege to communications with Successor Counsel "by claiming damages beyond the jury verdict," and thereby "plac[ing] their decision to settle squarely at issue."  Memorandum Opinion and Order at 14.  The Magistrate Judge explained that "it is anticipated that the only way Plaintiffs are able to prove their damages claims would be to use privileged materials that led them to the conclusion that settlement was their best course of action and was, therefore, proximately caused by Defendants' malpractice." *Id*. at 15.

Next, the Magistrate Judge decided that Defendants had shown that they are entitled to work-product materials under Rule 26(b)(3)(A).  The Magistrate Judge reasoned that

> Defendants need the materials in order to evaluate and defend against the amount of damages claimed, as well as to prosecute their 'comparative negligence' and 'superseding and intervening cause' affirmative defenses.  Defendants are unable to obtain the substantial equivalent of the materials by other means as they are completely in the possession and control of Plaintiffs' counsel.

Memorandum Opinion and Order at 16.  The Magistrate Judge gave Plaintiffs 20 days from the entry of the Memorandum Opinion and Order to produce the requested documents.  He also gave Plaintiffs 10 days from the entry of the Memorandum Opinion and Order "to provide written answers to the questions at issue from Mr. Addison under oath or by Affidavit…."  *Id*. at 17.

*B.  Standard of Review*

Plaintiffs file Plaintiffs' Objection under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). Section 636(b)(1)(A) states that a district judge may reconsider a pretrial matter heard and decided by a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Rule 72(a) further states that when a magistrate judge rules on a non-dispositive motion, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The clearly erroneous standard requires the Court to "accept the magistrate's factual findings unless it determines they are clearly erroneous." *Center for Biological Diversity v. Norton*, 336 F.Supp.2d 1155, 1158 (D.N.M. 2004) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)). When determining if a magistrate judge's order is contrary to law, the district court uses a *de novo* review of the magistrate judge's legal conclusions. *Id.* A magistrate judge's decision is contrary to law when "the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.,* 32 F.Supp.2d 162, 164 (D.N.J. 1998).

*C. Discussion*

Plaintiffs argue first that the Magistrate Judge's conclusion that Plaintiffs waived their attorney-client privilege by placing their post-trial communications with Successor Counsel "at issue" is contrary to New Mexico law and that the Magistrate Judge made clearly erroneous factual assumptions regarding the "at issue" waiver question. Defendants, however, claim that the "at issue" waiver decision is not clearly erroneous. Defendants maintain that Plaintiffs put at issue the settlement and post-trial proceedings by seeking to recover damages Plaintiffs incurred when they settled the Underlying Case and when they paid Successor Counsel's post-trial attorneys' fees. Second, Plaintiffs contend that the Magistrate Judge's determination that Defendants are entitled to disclosure of information protected by the work-product doctrine is

6

clearly erroneous and contrary to law.  Defendants argue, on the other hand, that the Magistrate

Judge's conclusion regarding the work-product doctrine is not clearly erroneous.

    *1.  Magistrate Judge's Decision that there was an "At Issue" Waiver of the Attorney-
    Client Privilege Contrary to New Mexico Law*

      In diversity cases like this one, state law governs the scope of the attorney-client privilege

and whether there has been a waiver of that privilege.  *Anaya v. CBS Broad., Inc.*, 251 F.R.D.

645, 649 (D. N.M. 2007).  In New Mexico, the client holds the attorney-client privilege and the

burden is on the party asserting attorney-client privilege to establish that privilege. *S.F. Pacific*

*Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133 ¶ 13, 36, 143 N.M. 215.  "The question

of whether a party has waived the attorney-client privilege is a matter of law…."  *Gingrich v.*

*Sandia Corp.*, 2007-NMCA-101 ¶ 12, 142 N.M. 359.  Since the issue of waiver is a question of

law which is subject to *de novo* review under § 636(b)(1)(A) and Rule 72(a), it is unnecessary for

the Court to decide if any factual assumptions the Magistrate Judge may have made regarding

the "at issue" waiver question are clearly erroneous.  The Court will, therefore, focus on a *de*

*novo* review of the Magistrate Judge's "at issue" waiver decision.

      Rule 11-511, NMRA 1998 provides that a client waives his or her attorney-client

privilege by either voluntarily disclosing confidential matters or consenting to the disclosure of

those matters.  In 2000, the New Mexico Court of Appeals held that a client implicitly consents

to disclosure of confidential or privileged information when he or she puts at issue an attorney's

advice by relying on that advice "to advance a claim or defense."  *Gingrich*, 2007-NMCA-101 ¶

15 (citing *Pub. Serv. Co. of N.M. v. Lyons*, 2000-NMCA-077 ¶¶ 15, 23, 129 N.M. 487)). "At

issue" waiver of the attorney-client privilege, therefore, "requires an offensive or direct use of

privileged materials" by the client.  *S.F. Pacific Gold Corp. v. United Nuclear Corp.*, 2007-

NMCA-133 ¶ 31, 143 N.M. 215 (citing. *Lyons*, 2000-NMCA-077 ¶ 23).  In other words, "waiver

is recognized only where a party seeks to limit its liability by describing that advice and by asserting that he relied on that advice." *Id*. (quoting *Lyons*, 2000-NMCA-077 ¶ 22) (internal quotation marks omitted).  Courts will, likewise, find "at issue" waiver "'where direct use [of the privileged materials] is anticipated because the holder of the privilege must use the materials at some point in order to prevail.'"  *Id*. (quoting *Lyons*, 2000-NMCA-077 ¶¶ 22, 28).  The New Mexico approach to "at issue" waiver does not recognize waiver when parties place their state of mind or the state of mind of an opponent at issue in the litigation. *Gingrich*, 2007-NMCA-101 ¶ 19 (citing *Lyons*, 2000-NMCA-077 ¶ 21). The "at issue" waiver does not apply even if the attorney-client communications are relevant to the state of mind issue or vital to an evaluation of the party's claims.  *Id*.  In fact, relevancy alone "is not the standard for determining whether or not evidence should be protected from disclosure as privileged…."  *Lyons*, 2000-NMCA-077 ¶ 21 (quoting *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 864 (3d Cir. 1994)).  Waiver, however, will be found if "a party makes 'direct or offensive' use of attorney-client communications in order to prove that it acted with a lawful intent…."  *Gingrich*, 2007-NMCA-101 ¶ 19 (citing *Lyons*, 2000-NMCA-077 ¶ 21).  The New Mexico Court of Appeals adopted this restrictive approach to "at issue" waiver because it considered it "to be the most consistent with the purpose underlying the privilege, which 'is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice.'" *Id.* at ¶ 15 (quoting *Lyons*, 2000-NMCA-077 ¶ 25) (internal quotation marks omitted).

The parties agree that New Mexico has adopted this restrictive direct or offensive approach to "at issue" waiver of attorney-client privilege.  Plaintiffs argue that there is no "at issue" waiver because they have not directly used post-trial privileged information in this case

nor do they plan to use that information to prove their case.  Defendants contend that Plaintiffs implicitly waived their post-trial attorney-client privilege because they need to rely on that information to prove damages related to the settlement and associated attorneys' fees. Defendants argue that two cases, *Rutgard v. Haynes*, 185 F.R.D. 596 (S.D. Cal. 1999) and *National Excess Ins. Co. v. Civerolo, Hansen & Wolf, P.A.*, 139 F.R.D. 398 (D.N.M. 1991), demonstrate that seeking damages for a post-trial settlement can effect an "at issue" waiver. Defendants also assert that they need access to the post-trial privileged matters to challenge Plaintiffs' settlement motives because Plaintiffs have not provided sufficient non-privileged information on that subject.

Under the New Mexico approach to "at issue" waiver, Plaintiffs would have waived their attorney-client privilege if they intended to prove the claim for settlement damages and associated attorneys' fees by relying on privileged materials. Waiver would, therefore, occur because the issue of settlement damages and associated attorneys' fees could not be decided without examining the privileged materials. *See, e.g., Woodbury Knoll, LLC v. Shipman and Goodwin, LLP*, 305 Conn. 750, 780-81, 48 A.3d 16, 35 (Conn. 2012). Plaintiffs, however, do not contend in their Complaint, or elsewhere, that they are relying on post-trial privileged information to prove damages nor do Plaintiffs contend that they plan to use post-trial privileged information to prove damages.  *See id.* ("at issue" waiver takes place "when a party specifically pleads reliance on an attorney's advice as an element of a claim…."). *See also Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP*, 2010 WL 4983183 (S.D. N.Y.) (unpublished decision) (there is no "at issue" waiver when the client does "not rely on privileged advice to prove its claims against Defendants.  And, it does not intend to rely on any privileged communications in

advancing its claims.  Instead, its claim on this issue is straightforward—Defendants committed malpractice….").

Furthermore, applicable case law supports the conclusion that merely seeking post-trial damages does not constitute "at issue" waiver of attorney-client privilege.  *See, e.g., Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill.2d 579, 587-88, 727 N.E.2d 240, 244-45 (Ill. 2000) ("If raising the issue of damages in a legal malpractice action automatically resulted in the waiver of the attorney-client privilege with respect to subsequently retained counsel, then the privilege would be unjustifiably curtailed.").  *See also Veras Inv. Partners, LLC v. Akin Gump Strauss Hauer & Feld LLP,* 52 A.D.3d 370, 374, 860 N.Y.S.2d 78 (N.Y. App. Div. 2008) (slip op.) ("The assertion of a cause of action with a claim for damages arising out of the settlement agreement does not constitute a waiver of the work-product immunity."). Unfortunately for Defendants, the cases they cite to support their argument that alleging damages resulting from a post-trial settlement constitutes an "at issue" waiver are distinguishable from this case.  First, the court in *Rutgard* relied on a less restrictive "at issue" waiver standard which the New Mexico Court of Appeals later explicitly rejected.  *See Rutgard*, 185 F.R.D. at 599-600 (citing to *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)); *Lyons*, 2000-NMCA-077 ¶¶ 15-23 (rejecting *Hearn*).  Second, a recent case from Connecticut rejected the reasoning in *Rutgard* because the court's decision was an "outlier" and because the *Rutgard* court based much of its holding on a case which the Illinois Supreme Court reversed.  *See Woodbury Knoll, LLC*, 305 Conn. at 783-83, 48 A.3d at 37.  And, third, the court in *National Excess, Ins. Co.* decided that case prior to the New Mexico Court of Appeals' decision in 2000 to adopt the restrictive standard for "at issue" waiver, and the court relied on a less restrictive standard which the New Mexico Court of

Appeals eventually rejected.  139 F.R.D. at 400 (applying *Hearn*, 68 F.R.D. at 580); *Lyons*,

2000-NMCA-077 ¶¶ 15-23 (rejecting *Hearn*).

      The Court further determines that Defendants cannot use post-trial privileged information

to show the Plaintiffs' state of mind or motives when Plaintiffs entered into the settlement.  Use

of post-trial information because it is simply relevant to the settlement also does not overcome

the attorney-client privilege.  Moreover, Defendants wrongly focus on their need for the post-

trial privileged information to challenge Plaintiffs' disclosed non-privileged information.

Defendants' need for privileged information has no bearing on the question of whether Plaintiffs,

as holders of the attorney-client privilege, directly or offensively relied on advice provided by

Successor Counsel to prove the claims raised in this lawsuit.

      Having conducted a *de novo* review of the Magistrate Judge's "at issue" waiver

determination, the Court concludes that the Magistrate Judge's determination is contrary to New

Mexico law.  Plaintiffs have carried their burden of demonstrating that they have not directly or

offensively put "at issue" any post-trial privileged information.  Consequently, Plaintiffs have

not waived their attorney-client privilege regarding communications with Successor Counsel and

the Court will set aside the Magistrate Judge's "at issue" waiver determination.

      *2.  Magistrate Judge Misapplied the Work-Product Doctrine*

      In diversity cases, Rule 26(b)(3)(A) governs work-product issues.  *Anaya*, 251 F.R.D. at

649.  Rule 26(b)(3)(A) states that "[o]rdinarily, a party may not discover documents and tangible

things that are prepared in anticipation of litigation or for trial by or for another party or its

representative…." Work-product materials, however, "may be discovered if: (i) they are

otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need

for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Rule 26(b)(3)(A).

Like a party asserting attorney-client privilege, the party asserting the work-product doctrine carries the burden of proving that the work-product doctrine applies.  *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). On the other hand, Rule 26(b)(3) allows discovery of an attorney's work-product if "(1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship."  *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998).  As with any privilege, "a litigant cannot use the work-product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."  *Id.*

To begin with, the Court finds that the Magistrate Judge correctly stated the law on the work-product doctrine.  In applying that law, the Magistrate Judge determined that Defendants needed the work-product information to evaluate and defend against Plaintiffs' damages claims and to prosecute their affirmative defenses.  The Magistrate Judge also determined that Defendants can only obtain the work-product information from Successor Counsel because they are in complete possession and control of that information.

The parties do not dispute the facts which the Magistrate Judge relied on when he made his work-product determination. The parties, however, now cite instances of discovery requests and deposition testimony to prove their respective positions on the ability of Defendants to obtain the substantial equivalent of Defendants' requested discovery without undue hardship. Since the Magistrate Judge apparently did not consider these instances of discovery requests and

deposition testimony in his Memorandum Opinion and Order, the Court, likewise, cannot consider them in reviewing the Magistrate Judge's Memorandum Opinion and Order.  *See, e.g., Koch Materials Co. v. Shore Slurry Seal, Inc.,* 216 F.R.D. 301, 304 (D.N.J. 2003) (citing *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92-93 (3rd Cir. 1992) ("In reviewing a Magistrate Judge's factual determinations, however, a District Court may not consider any evidence which was not presented to the Magistrate Judge.").  Consequently, the Court will only decide whether the Magistrate Judge properly applied the work-product doctrine to the facts he had before him.  Because this decision involves a question of law, the Court will conduct a *de novo* review of the Magistrate Judge's application of the work-product doctrine.

In this case, the parties do not dispute that the information which Plaintiffs deem to be work-product are indeed work-product.  Defendants, however, argue that they have substantial need for the work-product material and are unable to obtain the substantial equivalent of that information by other means without undue hardship.  Specifically, Defendants contend that they "do not have the option to test the veracity of Plaintiffs' allegations about why they agreed to pay roughly $3.4 million more than the remittitur to settle Guidance's claims, because only Plaintiffs and Morgan Lewis and/or Goodell DeVries possess this information."  Response at 9.  The Court agrees with the Magistrate Judge and Defendants' conclusion that Defendants have a substantial need for material relating to why Plaintiffs settled for an amount in excess of the remittitur.  The Court, however, disagrees with the Magistrate Judge's conclusion that Defendants would be unable to obtain the substantial equivalent of the work-product information by other means without undue hardship.  Neither the Magistrate Judge nor Defendants have provided any convincing reason why Defendants could not obtain substantial equivalent discovery from non-Successor Counsel sources without undue hardship.  In fact, several cases involving discovery of

13

privileged settlement information from successor counsel suggest that it is possible to obtain the

substantial equivalent of that information from other sources without undue hardship.  *See, e.g.,*

*Leviton Mfg. Co., Inc.*, 2010 WL 4983183 *5 ("Although it might be useful to Defendants to

know what Plaintiff's new attorneys were thinking about the patents after Defendants were

discharged as counsel, that knowledge is not critical to defending against the malpractice claim.

Defendants can attempt to establish that they were not professionally negligent, and even if they

were, that their negligence was not the proximate cause of injury to Leviton….  Those

propositions can be established by reference to objective facts and law.  Leviton's state of mind

or advice of counsel is not in issue."); *Veras Inv. Partners, LLC*, 52 A.D.3d at 374 ("The

assertion of a cause of action with a claim for damages arising out of the settlement agreement

does not constitute a waiver of the work-product immunity…."); *Deutsche Bank Trust Col. of

Am. v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 65, 837 N.Y.S.2d 15 (N.Y. App. Div.2007) (slip op.)

("We agree with Bankers Trust that the foregoing mass of nonprivileged material provides a

more-than-ample basis for the parties to litigate the reasonableness-an objective standard-of

Bankers Trust's decision to settle the WMI action rather than take the risk of going to trial; of the

amount it paid to settle the case; and of the amount it spent on it defense.");  *Fischel & Kahn,

Ltd.*, 189 Ill.2d at 589-90, 727 N.E.2d at 245-46 ("Evidence regarding the client's damages

resulting from the law firm's alleged negligence would, in the present context, be readily

available to either party….  Here, the privileged documents present one alternative means,

though perhaps the most convenient, in which this information may be obtained.  Mere

convenience, however, should not justify" disclosure of privileged information.).

   After conducting a *de novo* review of the Magistrate Judge's work-product determination,

the Court concludes that the Magistrate Judge misapplied the law of work-product doctrine when

he determined that Defendants had carried their burden of showing that they are entitled to work-product information under Rule 26(b)(3)(A).  The Magistrate Judge's work-product determination is, therefore, contrary to law and the Court will set aside that determination.

*D. Conclusion*

In sum, the Court will deny Plaintiffs' request for a hearing on Plaintiffs' Objection, grant Plaintiffs' Objection, set aside the Magistrate Judge's Memorandum Opinion and Order, and will deny the Motions to Compel.

IT IS ORDERED that:

1.  Plaintiffs' request for hearing is denied;

2.  PLAINTIFFS [SIC] OBJECTION TO MEMORANDUM OPINION AND ORDER [DOC. 131] AND REQUEST FOR EXPEDITED HEARING AND RULING (Doc. No. 139) is granted;

3.  The Magistrate Judge's MEMORANDUM OPINION AND ORDER (Doc. No. 131) is set aside;

4. LEWIS AND ROCA, LLP'S MOTION TO COMPEL (Doc. No. 47) is denied; and

5. LEWIS AND ROCA, LLP'S MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS (Doc. No. 75) is denied.

UNITED STATES DISTRICT COURT JUDGE

15