IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

       Plaintiffs,

vs.                                        Civ. No. 12-0104 KG/ACT

LEWIS AND ROCA, LLP
and THOMAS P. GULLEY, ESQ.,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

       Defendant Thomas P. Gulley, Esq. (Gulley) moves for partial summary judgment on the Plaintiffs' claims of breach of contract and breach of the covenant of good faith and fair dealing brought in Count II of the Complaint And Demand For Trial By Jury (Doc. 1) (Complaint), filed February 2, 2012. *See* Motion For Partial Summary Judgment As To Count II Of Complaint Against Defendant Gulley And Memorandum In Support Thereof (Doc. 38) (Partial Motion for Summary Judgment), filed July 26, 2012. In response, Plaintiffs filed, on August 8, 2012, Plaintiffs' Opposition To Motion For Partial Summary Judgment As To Count II Of Complaint Against Defendant Gulley (Doc. 40). Then, Gulley filed his Reply In Support Of Motion For Partial Summary Judgment As To Count II Of Complaint Against Defendant Gulley (Doc. 41) (Reply) on August 27, 2012.

A. *Background*

    1. *The Complaint*

This is a legal malpractice case arising from a lawsuit between Plaintiffs and Guidance Endodontics, LLC (Guidance) in which Defendants represented Plaintiffs.  In Count II of the Complaint, the count at issue in this Partial Motion for Summary Judgment, Plaintiffs maintain that Defendant Lewis and Roca, LLP (Lewis), an Arizona limited liability partnership, and Gulley, a partner at Lewis during the time period relevant to this lawsuit, breached their contract with Plaintiffs to provide legal services and breached the covenant of good faith and fair dealing by "failing to provide proper and adequate legal services…."  Complaint at ¶ 73.  Plaintiffs list numerous failings allegedly committed by Defendants in support of the breach of contract and breach of the covenant of good faith and fair dealing claims in Count II.  *Id.*

    2. *Undisputed Facts*

Gulley and counsel for Plaintiffs signed an engagement letter dated November 26, 2008, regarding the provision of legal services to Plaintiffs in the underlying lawsuit against Guidance. Ex. 1 (Doc. 38-2).  Gulley negotiated and drafted the engagement letter on Lewis letterhead. Gulley states in the first two sentences of the engagement letter:  "Thank you for looking to Lewis and Roca LLP to represent Dentsply and TDS in the referenced lawsuit.  We look forward to working with you and representing them in this matter."  *Id.* at 1.  In the "Scope of Engagement" portion of the engagement letter, Gulley states:  "We will defend Dentsply and TDS in the trial court, and if necessary, file counterclaims.  We will also advise them with respect to mediation."  *Id.*  Throughout most of the engagement letter, Gulley refers to "we," "us," "our," "Lewis and Roca," or the "Firm."

Gulley refers to himself in only two portions of the engagement letter:  the "Staffing"
portion and the "Initial Steps and Conduct of Representation" portion.  Gulley states in those
portions of the engagement letter that he will be the "primary attorney;" his hourly rate is
$265.00 an hour; he will use other attorneys and paralegals, if necessary, to assist him; he had
"been involved in the on-going temporary restraining order hearing;" and that he "will talk with
[Plaintiffs' counsel] and provide [Plaintiffs' counsel] with relevant documents and
correspondence as this matter proceeds." *Id.* at 1-2.  Gulley's signature is under the heading of
"LEWIS AND ROCA LLP." *Id*. at 3.

A Schedule Of Costs and Lewis And Roca LLP Standard Terms Of Engagement
(Standard Terms of Engagement) is attached to the engagement letter.  The Schedule of Costs
does not mention Gulley or Lewis.  The Standard Terms of Engagement, however, state in the
first sentence that "[t]his memo confirms our understanding of the general terms of the
representation Lewis and Roca LLP will undertake on behalf of you, our client." *Id*. at 5.  The
Standard Terms of Engagement also refer to "our representation of you," "our written
agreement," and "our legal engagement." *Id*.  The Standard Terms of Engagement do not
mention Gulley. Gulley further attests in an affidavit that he signed the engagement letter "as an
agent of Lewis and Roca and did not enter into the Agreement personally."  Exhibit A, Gulley
Aff. ¶ 6, June 24, 2012.

     *3.  The Partial Motion for Summary Judgment*

Gulley argues that he is entitled to summary judgment on Count II for two reasons.  First,
Gulley contends that no contract existed between Plaintiffs and him, personally, for the provision
of legal services.  Gulley argues that he signed the engagement letter only as an agent of Lewis
and that the contract was between Plaintiffs and Lewis.  Second, Gulley asserts that since no

contract existed between Plaintiffs and him, a claim for breach of the covenant of good faith and fair dealing necessarily fails.

Plaintiffs argue, on the other hand, that since the New Mexico Rules of Professional Conduct and case law provide that when a client retains a law firm it also retains each lawyer in the law firm, as a matter of law, the contract for legal services was between Plaintiffs and Gulley, personally, regardless of whether Gulley acted as Lewis' agent when he executed the engagement letter. Plaintiffs also argue that the express terms of the engagement letter clearly indicate that a contract existed between Plaintiffs and Gulley, personally. In the alternative, Plaintiffs contend, as a matter of law, that there was an implied contract between Plaintiffs and Gulley, personally. Plaintiffs further contend that at the very least there is a factual dispute as to whether an implied contract existed between Plaintiffs and Gulley, personally.

*B. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[1] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212

---

[1] Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

(10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*C. Discussion*

As an initial matter, Gulley asserts that Plaintiffs have failed to refute his statement of undisputed material facts. Under Rule 56(e), "[i]f a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or … issue any other appropriate order."  Consequently, Gulley concludes that since there is no material issue of fact, "[t]he plain language of the Agreement establishes that it is a contract between Lewis and Roca, LLP and Plaintiffs, not Gulley."  Reply at 2.  The Court finds that the material facts necessary to decide the Partial Summary Judgment are not in dispute. *See supra* "Undisputed Facts."  However, the Court must still decide the legal implications of those facts. Hence, the Court will not decide the Partial Motion for Summary Judgment without further discussion of the legal issues arising from those undisputed material facts.

1. *Whether, as a Matter of Law, there was a Contract Between Plaintiffs and Gulley, Personally*

It is well-established that "no one but parties to a contract could be bound by it or obtain rights under it."  *Merchants' Nat. Bank of Clinton, Iowa v. Otero*, 24 N.M. 598, 175 P. 781, 784 (1918).  Gulley argues that he was not a party to the engagement letter because he signed the engagement letter as an agent for Lewis.  Accordingly, Gulley contends that he cannot be liable for a breach of contract.  Plaintiffs dispute this argument on four grounds:  (1) since retaining a law firm is the same as retaining all of the lawyers in that law firm, as a matter of law, a contract

existed between Plaintiffs and Gulley, personally, even if Gulley was acting as an agent of Lewis; (2) the express terms of the engagement letter show that a contract existed between Plaintiffs and Gulley, personally; (3) an implied contract existed, as a matter of law between Plaintiffs and Gulley, personally; and (4) at the very least, there is a factual dispute regarding whether an implied contract existed between Plaintiffs and Gulley, personally.

First, Plaintiffs assert that even if Gulley was acting as an agent of Lewis, as a matter of law, retaining Lewis to provide legal services was the same as retaining its partner, Gulley, to provide legal services, thereby making Gulley a party to the contract for legal services. As Plaintiffs point out, the New Mexico Rules of Professional Conduct which concern imputed disqualification of attorneys from representation of clients arise "from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client…." Rule 16-110 NMRA 1998, Committee Commentary. Plaintiffs also cite to several cases for the proposition that retaining a law firm is the same as retaining all members of that firm. *See, e.g., George v. Caton*, 93 N.M. 370, 375, 600 P.2d 822, 827 (Ct. App. 1979) (an attorney negligence case). Those cases, however, do not involve breach of contract claims against attorneys, but instead they involve negligence or legal malpractice claims.

Gulley does not dispute that retaining a law firm is the same as retaining all of its lawyers. Gulley, however, disputes the relevance of this law in deciding if a contract existed between Plaintiffs and Gulley, personally. The Court agrees with Gulley. Certainly, the concept that employing a law firm is the same as employing its attorneys is relevant to issues involving attorneys' professional and ethical duties to their clients. Those issues arise in negligence or legal malpractice cases, but not in breach of contract cases. In fact, "[a] legal malpractice claim based on a breach of contract theory is governed by general contract law principles and 'must be

assessed under the terms of the contract.'"  *Svarzbein v. Saidel*, 1999 WL 729260 *9 (E.D. Pa.

1999) (unpublished decision) (quoting *Fiorentino v. Rapoport*, 693 A.2d 208, 212 (Pa.Super.),

*appeal denied*, 701 A.2d 577 (Pa. 1997)).  To show a breach of contract claim, a plaintiff "may

not rely upon evidence that the lawyer merely breached the general, non-contractually created

duty of care."  *Id*.  Consequently, Plaintiffs' reliance on law rooted in the duty of care attorneys

owe their clients is not supportive of Plaintiffs' argument that, as a matter of law, a contract

existed between Plaintiffs and Gulley, personally.

       Second, Plaintiffs argue that the express terms of the engagement letter, which Gulley

signed, show that Plaintiffs contracted with Gulley, personally.  Plaintiffs note that the

engagement letter contains express terms showing that Gulley will be the primary attorney, that

his hourly rate is $265.00, that he had already worked on the case, and that he would continue to

represent Plaintiffs.  To ascertain the meaning of a contract in New Mexico, including whether

someone is a party to a contract, one must look to the contract and interpret it "to 'give force and

effect to the intent of the parties.'"  *H-B-S Partnership v. Aircoa Hospitality Services, Inc.*, 2005-

NMCA-068 ¶ 19, 137 N.M. 626 (quoting *Medina v. Sunstate Realty, Inc.*, 1995-NMSC-002, 119

N.M. 136, 138).  To accomplish this, New Mexico courts "consider the plain language of the

relevant provisions, giving meaning and significance to each word or phrase within the context

of the entire contract, as objective evidence of the parties' mutual expression of assent.  A

reasonable construction of the usual and customary meaning of the contract language is favored."

*Id*. (citations omitted).  In the case of agents entering into a contract on behalf of a principal,

agents do not become parties to contracts if they make clear that they are "acting solely in a

representative capacity for a disclosed principal."  Restatement (Second) of Agency § 157, cmt. a

(1958.  As long as the agents have made clear in any part of the contract that they are acting

only in their representative capacities, "the fact that it is not equally clear in other parts is immaterial, and it is not necessary that [they] should constantly appear throughout the instrument to act only as a representative." *Id.*

A plain reading of the engagement letter shows that the Plaintiffs intended to contract with Lewis for legal services which would be provided by its partner Gulley. The following undisputed facts demonstrate that intent: (1) Gulley wrote the engagement letter on Lewis' letterhead; (2) Gulley states in the first two sentences of the engagement letter: "Thank you for looking to Lewis and Roca LLP to represent Dentsply and TDS in the referenced lawsuit. We look forward to working with you and representing them in this matter;" (3) Gulley further states: "We will defend Dentsply and TDS in the trial court, and if necessary, file counterclaims. We will also advise them with respect to mediation;" (4) throughout the majority of the engagement letter, Gulley refers to "we," "us," "our," "Lewis and Roca," or the "Firm;" (5) Gulley's signature is under the heading of "Lewis and Roca LLP" and not under his own name; (6) the Schedule of Costs does not mention Gulley; and (7) the attached Standard Terms of Engagement refer only to Lewis and not to Gulley. *See Electron Energy Corp. v. Short*, 408 Pa. Super. 563, 568, 597 A.2d 175, 177 (Pa. Super. 1991) (corporate letterhead, statement that corporation will provide services, and fact that corporate name appears under signer's name are factors indicating that signer did not assume personal liability under contract). Although Gulley refers to himself in a limited way in the engagement letter by stating that he had already worked on the case; that he will be the primary attorney; that he will use other attorneys and paralegals, if necessary, to assist him; that he "will talk with [Plaintiffs' counsel] and provide [Plaintiffs' counsel] with relevant documents and correspondence as this matter proceeds;" and that his hourly rate is $265.00 an hour, these references merely describe (1) the legal services which

8

Lewis had already provided to Plaintiffs via Gulley; (2) the legal services which Lewis intended to provide to Plaintiffs with Gulley as the primary attorney; and (3) the cost of Gulley's services. A plain reading of the engagement letter as a whole establishes that, as a matter of law, Plaintiffs intended to contract only with Lewis which would provide legal services through Gulley and that Gulley was acting solely in a representative capacity when he negotiated, drafted, and signed the engagement letter.[2] *See Holland v. Lawless*, 1981-NMCA-004, 95 N.M. 490, 494 (the existence of a contract establishing an attorney-client relationship "is generally an issue and question of law.").

Third and fourth, Plaintiffs argue that there was an implied contract between Plaintiffs and Gulley, personally, or at the very least, that there is a factual dispute as to whether there was an implied contract.  In New Mexico,

> when parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract, and the court should not read into the instrument additional provisions unless this is necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole. An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole.

*Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, 115 N.M. 690, 704.

Furthermore, "implied covenants are not favored in law, especially when a written agreement

---

[2] Moreover, under Arizona law on limited liability partnerships, contractual obligations incurred by a limited liability partnership belong solely to the limited liability partnership and a partner is not personally liable for those obligations. Ariz. Rev. Stat. Ann. § 29-1026(C) (1996) Hence, Gulley cannot be personally liable for Lewis' obligations under the engagement letter.

between the parties is apparently complete.  The general rule is that an implied covenant cannot co-exist with express covenants that specifically cover the same subject matter." *Id.*

In this case, the engagement letter, which describes the agreement between Plaintiffs and Lewis to provide legal services to Plaintiffs with Gulley as the primary attorney, presumably embodies the entire agreement between Plaintiffs and Lewis.  It is not necessary to read into the engagement letter a separate implied contract or covenant between Plaintiffs and Gulley, personally, to effectuate the intention of the parties manifested in the engagement letter, i.e., that Lewis will provide legal services to Plaintiffs with Gulley as the primary attorney. Moreover, the engagement letter does not indicate that Plaintiffs and Lewis clearly contemplated including an implied contract or covenant between Plaintiffs and Gulley, personally, which Plaintiffs and Lewis would have deemed unnecessary to expressly provide for in the engagement letter.  Since implied covenants are disfavored when the written agreement between the parties is apparently complete, as in this case, a separate implied contract or covenant between Plaintiffs and Gulley, personally, could not have co-existed with the express terms in the engagement letter. Consequently, as a matter of law, there could not have been an implied contract between Plaintiffs and Gulley, personally. *See Holland*, 95 N.M. at 495 (existence of contract establishing attorney-client relationship is generally question of law).  Because the Court has decided the implied contract issue as a matter of law based on undisputed facts, the issue of whether there is a factual dispute regarding the existence of an implied contract is moot.  In sum, Gulley is entitled to summary judgment on the breach of contract claim.

2.  *Whether, as a Matter of Law, a Claim for Breach of the Covenant of Good Faith and Fair Dealing Exists*

If there is no enforceable contract, one cannot bring a claim for breach of the covenant of good faith and fair dealing sounding in contract law. *See, e.g., Rennick v. O.P.T.I.O.N. Care,*

*Inc.*, 77 F.3d 309, 317 (9th Cir.), *cert. denied*, 519 U.S. 865 (1996).  Since, as a matter of law, there is no enforceable contract between Plaintiffs and Gulley, personally, a breach of the covenant of good faith and fair dealing claim against Gulley, personally, cannot exist.  Gulley is, therefore, entitled to summary judgment on the breach of the covenant of good faith and fair dealing claim.  Accordingly, Gully is entitled to summary judgment on Count II of the Complaint.

IT IS ORDERED that:

1.  Gulley's Motion For Partial Summary Judgment As To Count II Of Complaint Against Defendant Gulley and Memorandum In Support Thereof (Doc. 38) is granted;

2.  summary judgment will be entered in Gulley's favor on Count II of the Complaint; and

3.  Count II will be dismissed against Gulley with prejudice.

_____
UNITED STATES DISTRICT JUDGE